UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KELLY DWYER | § | |
| | § | |
| v. | § | C.A. Number: _____ |
| | § | |
| UNITEDHEALTHCARE | § | |
| INSURANCE COMPANY | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kelly Dwyer files this Original Complaint asserting causes of action in law and equity for relief against Defendant UnitedHealthcare Insurance Company.

## I.
## PARTIES

1. Plaintiff, Kelly Dwyer, is a resident of Austin, Texas. He brings this action to recover benefits for his minor daughter's treatment of a severe mental illness. Pursuant to Federal Rule of Civil Procedure 5.2, Plaintiff's daughter is referenced by her initials, E.D.

2. Defendant, UnitedHealthcare Insurance Company ("UnitedHealthcare"), is a domestic or foreign company licensed to do business and doing business in the state of Texas. It can be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street Suite 620, Austin, TX 78701-3218, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

3. This action against UnitedHealthcare arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because UnitedHealthcare maintains business activity in and may be found in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

6. Plaintiff was at all relevant times a covered beneficiary under an employee welfare benefit plan ("Plan"). Plaintiff and his daughter were entitled to health care benefits under the Plan.

7. UnitedHealthcare was the insurer and Plan Administrator of the Plan.

8. In February 2015, Plaintiff's daughter, E.D., suffered from anorexia nervosa, generalized anxiety disorder, major depressive disorder, and social phobia. She had severe malnutrition and bradycardia (low heart rate). She was 14 years old.

9. E.D. did not improve with an outpatient treatment team specialized in treating eating disorders. Her physician recommended residential treatment.

10. E.D. was admitted to residential treatment at Avalon Hills Treatment Center ("Avalon Hills") on February 25, 2015. Upon admission, E.D. exhibited eating disorder behaviors such as taking small and slow bites of food, underplating her food, trying to "ditch food," and unnecessary leg shaking, muscle flexing, and

movement intended to burn calories. Her blood work showed several abnormalities. She was 5'2" and weighed 75.8 lbs.

11. United Behavioral Health ("UBH") authorized benefits for E.D.'s residential treatment from her admission on February 25, 2015 until June 11, 2015. On June 11, 2015, UBH denied further benefits for residential treatment.

12. Although UBH acted as a Claims Administrator for Plaintiff's claims, UBH is not designated as Claims Administrator in the Plan.

13. On June 18, 2015, Avalon Hills' staff members Dr. Sara Boghosian and Chad Speth, and E.D.'s outpatient physician, Dr. Ed Tyson, had an expedited appeal telephone call with UBH employee Dr. Sherrel Jones. Avalon Hills's staff reported that E.D. had a very distorted body image and weight gain had increased her distress. Her eating disorder behaviors included constant movement, over-exercise, and trying to "ditch" calories. E.D. was not taking redirection well, and at times it took several redirections for E.D. to listen. E.D. told Avalon Hills' clinicians that she wanted to go home, where she would restrict food and lose weight immediately. Lab results showed a low red blood count, low hemoglobin, and low blood pressure.

14. UBH denied further benefits for E.D.'s residential treatment.

15. Due to UBH's denial, E.D. transitioned to partial hospitalization at Avalon Hills on June 19, 2015.

16. UBH initially authorized benefits for E.D.'s partial hospitalization and continued to approve benefits for partial hospitalization in 3 to 7 day increments.

17. On July 22, 2015, Avalon Hills' staff members Dr. Jenna Glover and Chad Speth had a peer to peer telephone call with UBH employee Dr. Michael Seay. Avalon Hills' staff reported that E.D. still had low blood pressure, weighed 117 lbs. at height

of 5'3", and lost 2 lbs. during a pass with her family. During that pass, E.D. had a breakdown in a dressing room while shopping with her mother, and it took several hours for her to recover.

18. UBH denied further authorization for E.D.'s partial hospitalization. Avalon Hills requested an expedited appeal.

19. On July 24, 2015, Avalon Hills' staff members Dr. Jenna Glover and Chad Speth, and E.D.'s outpatient physician, Dr. Ed Tyson, had a telephone appeal review with UBH employee Dr. Barbara Center. Avalon Hills' staff reported that E.D. was starting to make up the 2 lbs. that she lost while on pass and again explained the terrible shopping experience caused by E.D.'s body image. She struggled with impulse control. Her lab results were abnormal, and she was anemic. Avalon Hills also stated that E.D.'s brain was still suffering from malnutrition.

20. UBH denied the expedited appeal and confirmed its denial in a letter dated July 24, 2015.

21. E.D. remained in partial hospitalization treatment at Avalon Hills until her discharge on September 11, 2015.

22. Plaintiff incurred the costs of E.D.'s treatment at Avalon Hills.

23. Avalon Hills submitted claims to UnitedHealthcare pursuant to its negotiated contract with Multiplan Network, a service utilized by insurers to negotiate out-of-network rates.

24. UnitedHealthcare did not pay Plaintiff's claims at the negotiated Multiplan rate.

25. On August 5, 2015, Plaintiff submitted a written appeal to UnitedHealthcare requesting that it pay the claims based on the negotiated Multiplan rate.

26. UBH has still not responded to Plaintiff's August 5, 2015 appeal.

27. Upon discharge, E.D. resumed outpatient services from her physician, Dr. Ed Tyson, who specializes in the treatment of patients with eating disorders.

28. Plaintiff requested that UnitedHealthcare issue a gap exception[1] for Dr. Tyson because he was the only physician in E.D.'s geographical area who was qualified to treat adolescents with eating disorders. Plaintiff asked UnitedHealthcare to reimburse Dr. Tyson as an in-network provider because of his unique specialization with eating disorders.

29. In March 2016, UnitedHealthcare's Kevin Jaques informed Plaintiff by telephone that UnitedHealthcare denied the request for a gap exception for Dr. Tyson.

30. Plaintiff made several requests to UnitedHealthcare for a written denial letter regarding the gap exception. To date, UnitedHealthcare has not provided a copy of the denial letter to Plaintiff.

31. UnitedHealthcare paid claims for Dr. Tyson's services as an out-of-network physician.

32. On June 1, 2016, Plaintiff submitted a written appeal to UnitedHealthcare requesting that UnitedHealthcare issue a gap exception and reimburse Dr. Tyson as a network physician because UnitedHealthcare did not have any in-network physicians who specialize in the treatment of patients with eating disorders.

33. On June 25, 2016, UnitedHealthcare denied the appeal, stating that Dr. Tyson was properly paid as an out-of-network provider. UnitedHealthcare did not respond to the request for a gap exception.

---

[1] A gap exception is a waiver from a health insurance company that allows patients to receive services from an out-of-network provider at an in-network rate due to gaps in the insurer's network of healthcare providers.

34. On August 23, 2016, Plaintiff submitted a written second level appeal. Plaintiff's request for a gap exception was based on UnitedHealthcare having no in-network physician within his geographical area who specialized in the medical evaluation and treatment of patients with eating disorders. Plaintiff noted that when he requested the gap exception, UnitedHealthcare instead referred him to E.D.'s own pediatrician, Dr. Thomas B. Dawson. However, Dr. Dawson had referred E.D. to Dr. Tyson, because Dr. Dawson knew that he was under-qualified to treat E.D. because he lacked the training, experience, and qualifications to treat patients with eating disorders.

35. On October 28, 2016, UnitedHealthcare denied the second level appeal, claiming that it was not received within 60 days of the denial notice.

36. Plaintiff's August 23, 2016 letter was served by certified mail and faxed to UnitedHealthcare on August 23, 2016.

37. Plaintiff sent his August 23, 2016 letter less than 59 days from the date he received UnitedHealthcare's June 25, 2016 letter denying his appeal.

38. Having exhausted his administrative remedies, Plaintiff brings this action to recover the health coverage benefits promised in the Policy and the Plan.

## IV.
## CLAIM FOR DENIAL OF BENEFITS

39. UnitedHealthcare and/or UBH wrongfully denied E.D.'s claims for medical benefits at a time when UnitedHealthcare and/or UBH knew, or should have known, that E.D. was entitled to those benefits under the Plan terms.

40. UnitedHealthcare and/or UBH failed to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan, in relation to the

applicable facts and plan provisions, for the denial of E.D.'s claims for medical benefits.

41. UnitedHealthcare and/or UBH failed to properly and adequately investigate the merits of E.D.'s health claims and failed to provide her with a full and fair review pursuant to 29 C.F.R.§2560.501-1 (h)(3)(iii) by failing to consult with health care professionals with appropriate training and experience in the field of medicine involved in the medical judgment.

42. UnitedHealthcare and/or UBH's medical reviewers failed to thoroughly and independently evaluate E.D. and her medical records before denying Plaintiff's claim and appeal.

43. On information and belief, UnitedHealthcare and/or UBH wrongfully denied E.D.'s claims for health benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in litigation and which he will immediately make Defendant aware of once said acts or omissions are discovered by him.

44. As a proximate result of the denial of E.D.'s medical benefits, Plaintiff has been damaged in the amount of all of the medical bills incurred, in a total sum exceeding $110,000.00, with exact damages to be proven at the time of trial.

45. The wrongful conduct of UnitedHealthcare and/or UBH has created uncertainty where none should exist; therefore, Plaintiff is entitled to enforce his daughter's rights under the terms of the Plan and to clarify her right to future benefits under the terms of the Plan.

## V.
## CLAIM FOR EQUITABLE RELIEF

44. As a direct and proximate result of UnitedHealthcare's failure to pay for E.D.'s medical benefits, and the resulting injuries and damages sustained by her as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant him the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

   (a) Restitution of all past benefits due for E.D.'s treatment at Avalon Hills and with Dr. Tyson, and prejudgment and post-judgment interest at the lawful rate;

   (b) A mandatory injunction requiring UnitedHealthcare to immediately qualify Plaintiff for medical benefits due and owing under the Plan;

   (c) A determination that overturns UnitedHealthcare's denial(s) of benefits;

   (d) Such other and further relief as the Court deems necessary and proper to protect Plaintiff's interests as a participant under the Plan.

## VI.
## STANDARD OF REVIEW

45. The default standard of review for denial of a benefit claim is *de novo.* When the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

46. The Policy may contain a discretionary clause or language UnitedHealthcare may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of the Policy, and determine the facts. UnitedHealthcare's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

47. If discretion applies, the Court should afford UnitedHealthcare less deference in light of its financial conflict of interest. UnitedHealthcare's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Plaintiff's claim and as the potential payor of that claim.

48. UnitedHealthcare's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. UnitedHealthcare's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

49. Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other UnitedHealthcare policyholders and claimants.

50. UnitedHealthcare, in light of its financial conflict, should be accorded little or no discretion in its claims decision.

51. Alternatively, the standard of review of this claim should be *de novo,* affording UnitedHealthcare no discretion in its interpretation of the terms of the Policy and Plan, nor in its factual determinations.

46. UBH denied E.D.'s residential treatment beyond June 11, 2015. It also denied E.D.'s claim for partial hospitalization. UBH also denied her expedited appeal.

52. Although UBH acted as a Claims Administrator for Plaintiff's claims, UBH is not designated as Claims Administrator in the Plan. There is no evidence that UnitedHealthcare made the decision to deny E.D.'s residential treatment or partial hospitalization treatment claims.

53. The failure of an Administrator to actually exercise discretion granted to it warrants *de novo* review. *Seman v. FMC Corp. Retirement Plan For Hourly*

*Employees*, 334 F.3d 728, 733 (8th Cir. 2003) ("When a plan administrator denies a participant's initial application for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be *de novo*").

54. Pursuant to Texas Ins. Code. Art. 21.42, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. Tex. Ins. Code §1701.062; 28 Tex. Admin. Code §3.1202. Accordingly, review of Plaintiff's claim and UnitedHealthcare and/or UBH's claims handling conduct both in their interpretation of terms of the Policy and the Plan, and in their determination of the facts, should be *de novo.*

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

55. Plaintiff seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees together with his costs of court pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

54. Plaintiff respectfully prays that upon trial of this matter, this Court find in his favor and against Defendant and issue judgment against Defendant as follows:

   (a) That Defendant pay to Plaintiff all benefits due and owing consistent with the terms of the Plan, as well as all interest due thereon and as allowed by law;

   (b) That Defendant pay all reasonable attorneys' fees incurred and to be incurred in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

(c)     For all other such relief, whether at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

By: _____
James C. Plummer, TBA #16075700
Amar Raval, TBA #24046682
**Berg Plummer Johnson & Raval**
4203 Montrose Boulevard, Suite 260
Houston, Texas 77006
(713) 526-0200
(832) 615-2665 (Fax)
Jplummer@bergplummer.com
Araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF