IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KELLY DWYER, | § | |
| PLAINTIFF, | § | |
| | § | CAUSE NO. 1:17-CV-439-LY |
| V. | § | |
| | § | |
| UNITEDHEALTHCARE INSURANCE COMPANY, | § | |
| | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On November 8, 2019, the court called the above-styled case for bench trial. The parties appeared by counsel. Having carefully considered the evidence presented at trial, the parties' trial briefs and responses, the case law applicable to this action, the arguments of counsel, the parties' supplemental authority and responses, and the administrative record, the court will uphold the plan administrator's decision in all respects. In so deciding, the court makes the following findings of fact and conclusions of law.[1]

### I. Procedural History and Jurisdiction

The court has jurisdiction over this cause because Plaintiff Kelly Dwyer's claims, governed by the Employee Retirement Income Security Act of 1974 ("ERISA")[2], arise under the laws of the United States. *See* 28 U.S.C. § 1332(a)(1)(B) (2018).

---

[1] All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

[2] 29 U.S.C. §§ 1001-1461 (2018 & Supp. 2022).

## II. Discussion and Analysis

*Factual Background*

This is an ERISA case in which Dwyer seeks mental health benefits for his daughter's eating-disorder treatment. Dwyer and his minor daughter, E.D., were covered under an employee-group health-benefit plan (the "Plan") sponsored by Dwyer's employer. The Plan was funded through an insurance policy issued by Defendant UnitedHealthcare Insurance Company ("United"). United Behavioral Health ("UBH") acted as claims administrator.

E.D. developed anorexia at 12 years old. Her parents' pediatrician referred E.D. for treatment with an outpatient team of eating-disorder specialists, including Dr. Ed Tyson. Despite months of outpatient treatment, however, E.D.'s symptoms worsened, at which time Dr. Tyson referred her to Avalon Hills Treatment Center ("Avalon") for residential treatment due to lack of progress at the outpatient level of care and medical instability. On February 25, 2015, E.D. was admitted to Avalon. She was 14 years old. At Avalon, E.D. was diagnosed with anorexia, generalized anxiety disorder, major depressive disorder, social phobia, and severe malnutrition.

UBH authorized benefits for E.D.'s residential treatment from February 25, 2015 to June 11, 2015. On June 11, 2015, UBH denied benefits for residential treatment. Avalon disputed the denial, recommending further residential treatment for E.D. UBH denied Avalon's appeal, after which E.D. transitioned to partial hospitalization at Avalon on June 19, 2015.

UBH initially authorized benefits for E.D.'s partial hospitalization beginning June 19, 2015, continuing to approve benefits in three-to-seven-day increments thereafter. On July 21, 2015, UBH denied any further authorization for partial hospitalization. Avalon requested an expedited appeal, and on July 24, 2015, Avalon staff and Dr. Tyson appeared for a telephonic review with UBH. UBH

2

denied the appeal by letter on July 24, 2015. E.D. continued in partial hospitalization at Avalon at Dwyer's expense until her discharge on September 11, 2015.

Dwyer provided UBH with E.D.'s treatment records from Avalon on March 21, 2016, requesting that UBH reconsider and approve Dwyer's claims prior to Dwyer filing suit. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). On April 28, 2016, UBH denied Dwyer's request for reconsideration.

For all dates of service, Avalon submitted claims to United for payment pursuant to its negotiated rates with MultiPlan Network ("MultiPlan"), a service utilized by insurers to negotiate rates with non-network providers. United did not pay claims at the MultiPlan rate negotiated with Avalon, however, instead paying 50% of Avalon's billed rate for residential and partial hospitalization treatment. On August 5, 2015, Dwyer submitted a written appeal requesting that United pay the claims based on the negotiated MultiPlan rate. On August 14, 15, and 17, 2015, United sent letters acknowledging receipt of the appeal but did not further respond to Dwyer's August 5, 2015 appeal.

Upon her discharge from Avalon, E.D. returned home to Texas and resumed outpatient medical care with Dr. Tyson. Dwyer requested that United issue a gap exception for Dr. Tyson, an out-of-network provider, and reimburse Dr. Tyson's services as an in-network provider because E.D.'s pediatrician referred E.D. to Dr. Tyson, a specialist in treating eating disorders in adolescents. In May 2016, United denied the request for a gap exception for Dr. Tyson by email.

On June 1, 2016, Dwyer submitted a written appeal, which was denied on June 25, 2016. On August 23, 2016, Dwyer submitted a second-level appeal, which was denied on October 28, 2016. Dwyer subsequently filed this suit against United on May 11, 2017.

### *Standard of Review*

ERISA provides federal courts with jurisdiction to review benefit determinations. *See* 29 U.S.C. § 1132(a)(1)(B); *Baker v. Metro Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). An administrator's denial of benefits under an ERISA plan is reviewed by the district court under a *de novo* standard, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In this case, the insurance policy does not provide a delegation of discretion to UHC or UBH. Moreover, any delegation of discretion is unenforceable when applied to health-insurance policies issued in Texas. 28 Tex. Admin. Code §3.1201(b); Tex. Ins. Code §1701.062; *Ariana M. v. Humana Health Plan of Tex.*, 884 F.3d 246, 250 (5th Cir. 2018) (en banc). The Fifth Circuit recently revised its scope of the *de novo* standard of review in ERISA cases to include *de novo* review of all ERISA benefit determinations, whether legal or factual. *Ariana M.*, 884 F.3d at 256. *See also Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 283 (5th Cir. 2021) (Courts "review *de novo* a nondiscretionary denial of benefits challenged under ERISA, regardless of whether the denial is based on factual determinations or interpretation of the plan's language.")

### *Denial-of-Benefits Claim*

The Plan provides benefits for medically-necessary mental-health treatment, including partial hospitalization or day treatment and residential treatment. "Medically necessary" is defined under the Plan as:

• In accordance with *Generally Accepted Standards of Medical Practice.*

• Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for your Sickness, Injury, Mental Illness, substance-related and addictive disorders, disease or its symptoms.
• Not mainly for your convenience or that of your doctor or other health care provider.

• Not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms.

Administrative Record ("A.R.") at 64–65.[3]

Dwyer asserts that the weight of the evidence supports benefits for all of E.D.'s partial-hospitalization treatment. Dwyer contends that the evidence shows that E.D. required partial hospitalization because she could not sustain her weight outside of the treatment facility, she required medication stabilization, and she was at high risk for relapse. Dwyer argues that the court should apply little or no weight to UBH's decision to deny benefits after June 11, 2015, because UBH did not apply United's insurance-policy language, relying instead on UBH mental-health guidelines to deny Dwyer's claims and because UBH's decision is not supported by the administrative record.

In response, United argues that UBH approved benefits until it was determined that E.D.'s condition had improved such that the Partial Hospitalization Program ("PHP") level of care was no longer medically necessary. Once the PHP level of care was determined to be no longer medically necessary, UBH denied continued PHP level benefits. United asserts that UBH's denial of continued PHP benefits to E.D. is well supported by the evidence in the administrative record.

---

[3] All references to pages A.R. 1 to 1599 are to the parties' agreed Administrative Record filed with the court under seal on May 13, 2019 (Doc. #78) and identified as DWYER 000001 to DWYER 001599.

In July 2015, in connection with its continued review of E.D's treatment and progress, UBH determined that the PHP level of care was no longer medically necessary for reasons including: (1) no demonstration of self-injurious ideation/behavior or violent ideations; (2) positive weight gain of 42 pounds; and (3) normal limits for body mass index and weight. A.R. at 636. UBH referred E.D's file to Associate Medical Director Dr. Michael Seay for review. Dr. Seay reviewed E.D.'s file and spoke with the Avalon Hills attending physician, Dr. Jenna Gluber. Taking into account the information from E.D's records and his discussion with Dr. Gluber, Dr. Seay, determined that treatment at the PHP level of care was no longer medically necessary under the Optum Level of Care Guideline for the Mental Health Partial Hospitalization Program/Day Treatment Level of Care as of July 21, 2015, and that E.D. could successfully continue treatment at an intensive outpatient level of care. A.R. at 636–38.

The Plan provides that claims for mental-healthcare services will be determined, in part, based on criteria established in the UBH's mental-health guidelines. A.R. at 65. Dwyer argues that *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS, 2019 WL 1033730 at *16 (N.D. Cal. Mar., 5, 2019) would support a finding by this court that UBH's mental-health guidelines impermissibly deviate from generally accepted standards of care under the Plan. On appeal, however, the Ninth Circuit recently held that "the district court's substitution of its interpretation of the Plans for UBH's interpretation that is consistent with the language of the Plans was erroneous." *Wit v. United Behavioral Health*, 58 F.4th 1080, 1097 (9th Cir. 2023).

Dwyer also challenges the opinion of Dr. Barbara Centers, a board-certified independent, external-peer-review consultant who reviewed E.D.'s file, arguing that her opinions are not entitled to any weight because she did not examine E.D. A.R. at 1351–52. "[C]ourts have no warrant to

require administrators automatically to accord special weight to the opinions of a claimant's physician[,] nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). In *Anderson v. Cytec Indus., Inc.*, the Fifth Circuit held that the fact that the "independent experts reviewed [plaintiff's] records but did not examine him personally [ ] does not invalidate or call into question their conclusions." 619 F.3d 505, 515 (5th Cir. 2010). The circuit further held that plan administrators are not required to give special deference to the opinions of treating physicians. *Id.* (citing *Black & Decker Disability Plan*, 538 U.S. at 831). The court will apply equal weight to Dr. Center's review as provided in the administrative record.

Having reviewed the evidence in the administrative record, the court concludes that UBH made its determination to deny continued PHP level benefits consistent with the terms of the Plan and UBH's mental-health guidelines. Therefore, the court will deny Dwyer's claim alleging wrongful denial of benefits.

### *MultiPlan Claim*

Dwyer asserts that United failed to pay Dwyer's claims for E.D.'s treatment at Avalon at the MultiPlan negotiated rate. MultiPlan is a vendor of United. The MultiPlan Network Agreement (the "Agreement") between United and MultiPlan allows MultiPlan to negotiate rates with non-network providers. The Agreement further provides that United is responsible for paying MultiPlan network providers at negotiated contract rates.

Dwyer seeks judgment for United's underpayment on all dates of service that were approved for E.D.'s treatment at Avalon. Because MultiPlan negotiates rates with Avalon on behalf of United,

Dwyer asserts that United was obligated to pay for E.D.'s treatment at Avalon at the negotiated rates. Dwyer further argues that he disputed the underpayment in a written appeal and United failed to respond to the appeal. Dwyer attaches as Exhibit A to Plaintiff's Reply Trial Brief (Doc. #94-1), the Declaration of Loreen Thompson in Support of Plaintiff's Reply Trial Brief, which includes the third-party network agreement between MultiPlan and Avalon attached as Exhibit A to the declaration.

In response, United filed Defendant's Opposed Motion to Strike Declaration Filed with Plaintiff's Reply Trial Brief (Doc. #97). United seeks to strike the declaration and agreement from the record in this case, asserting that the agreement was never produced, disclosed, or otherwise made part of the administrative record. In response, Dwyer asserts that the declaration and attached agreement are rebuttal evidence to new arguments presented by United in Defendant UntiedHealthcare Insurance Company's Responsive Trial Brief (Doc. #93).

"[T]he administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) (en banc). If the agreement between MultiPlan and Avalon included with Loreen Thompson's declaration had been presented to the plan administrator before filing this lawsuit in time for the plan administrator's fair consideration, it could be treated as part of the record for this court's review. *See id.* Because there is no evidence that Dwyer presented the agreement between MultiPlan and Avalon to the plan administrator, this court will not treat the agreement as part of the record. Therefore, the court **GRANTS** Defendant's Opposed Motion to Strike Declaration Filed

with Plaintiff's Reply Trial Brief (Doc. #97) to the extent that the court will consider neither the Declaration of Loreen Thompson nor the agreement between MultiPlan and Avalon attached to it.

Dwyer also attempts to bring the MultiPlan Network Agreement and some related correspondence before the court by asserting they are part of the administrative record.[4] United disputes the documents are part of the administrative record and argues they should not be considered by the court. "[T]he district court is constrained to the evidence before the plan administrator." *Vega*, 188 F.3d at 299. None of the disputed documents were included in the evidence before the plan administrator, and Dwyer has provided no evidence that he sought to bring the disputed documents in the evidence before the plan administrator. Because the disputed documents do not meet the Fifth Circuit's exceptions related to interpreting the plan or explaining medical terms, *see id.*, the court finds the documents are not part of the administrative record and shall not consider the disputed documents in the court's determination of this case.

Even if the court were to consider the MultiPlan agreements with United and Avalon, however, neither constitute evidence supporting Dwyer's claim for additional benefits on previously paid claims. United argues that Dwyer's assertion that United should have paid Avalon at rates set forth in Avalon's agreement with MultiPlan is wholly inconsistent with the explicit language of the Plan, including the Shared Savings Program terms, because both state that United has the right–but not the obligation–to pay the negotiated rate.

The Plan provides: "When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on: Negotiated rates agreed to by the non-Network

---

[4] The disputed documents are included in Exhibit B of Doc. #78, and are Bates stamped DWYER 001600 to DWYER 2082.

9

provider and either us or one of our vendors, affiliates or subcontractors, *at our discretion.*" A.R. at 99 (emphasis added). Additionally, the Plan's Shared Savings Program

> provides access to discounts from the provider's charges when services are rendered by those non-Network providers that participate in that program. We will use the Shared Savings Program to pay claims *when doing so will lower Eligible Expenses*. We do not credential the Shared Savings Program providers and the Shared Savings Program providers are not Network providers. Accordingly, in Benefit plans that have both Network and Non-Network levels of Benefits, Benefits for Covered Health Services provided by Shared Savings Program providers will be paid at the Non-Network Benefit level.

A.R. at 68 (emphasis added). The Plan expressly grants United the discretion to pay negotiated rates and at non-network benefit levels when doing so will lower Eligible Expenses. In addition, United's discretion is not limited under the terms of the Plan. Therefore, the court will deny Dwyer's claim for additional benefits on previously paid claims.[5]

### Gap-Exception Claim

Dwyer asserts that United failed to address his request to approve Dr. Tyson as an in-network provider through a gap exception under the Plan. Dwyer requested a gap exception for Dr. Tyson to be paid as an in-network provider based on a referral from E.D.'s pediatrician who stated he was not qualified to treat E.D. for her eating disorder.

United argues that Dwyer's claim of entitlement to a gap exception fails as a matter of law because his request was untimely, and because such request did not satisfy the requirements of the Plan. Among other things, United contends that the Plan requires that a request for treatment by a

---

[5] Dwyer also asserts that United has waived its right to challenge Dwyer's claim for additional benefits on previously paid claims because United failed to respond to Dwyer's administrative appeal on this issue. United concedes its failure to respond, arguing that United's failure to respond does not create a substantive right under the Plan, but rather serves to exhaust his administrative remedies to allow Dwyer to file suit. *See Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993). The court agrees.

out-of-network provider to be paid as in-network must be made before the treatment is provided and in coordination with United; therefore it cannot be applied retroactively. United asserts that Dwyer did not seek this relief until long after E.D. began treatment and without any coordination with United. The court agrees.

> Pursuant to the Plan's Schedule of Benefits:
>
> [i]f specific Covered Health Services are not available from a Network provider, you may be eligible for Network Benefits when Covered Health Services are received from non-Network providers. In this situation, your Network Physician will notify us and, if we confirm that care is not available from a Network provider, we will work with you and your Network Physician to coordinate care through a non-Network provider.

AR at 101. E.D's pediatrician referred her for treatment with Dr. Tyson, an out-of-network specialist, in 2014 without first notifying United. Years later, Dwyer requested that United retroactively grant a gap exception for the treatment after E.D. had already been treated by Dr. Tyson. The court concludes that based upon the Plan terms, Dwyer is not entitled to a retroactive gap exception because Dwyer failed to make the request before Dr. Tyson's service's were rendered and failed to make the request in accordance with the requirements under the terms of the Plan. *See* A.R. at 45. Therefore, the court will deny Dwyer's gap-exception claim.

### III. Conclusion

For the above and foregoing reasons, the court will affirm the plan administrator's decision in all respects, and will render a final judgment accordingly.

**SIGNED** this \_\_14th\_\_ day of April, 2023.

*[signature]*
LEE YEAKEL
UNITED STATES DISTRICT JUDGE
