**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KELLY DWYER,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **UNITEDHEALTHCARE INSURANCE** | § | **A-17-CV-439-RP** |
| **COMPANY,** | § | |
| **Defendant.** | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court is Plaintiff's Motion for Attorneys' Fees, Costs, and Interest (Dkt. 133) and all responsive briefing.[1] After reviewing the Motion and related briefing, against the backdrop of the entire docket, the court submits the following Report and Recommendation to the District Judge.

I.    **BACKGROUND**

Plaintiff Kelly Dwyer's minor daughter, E.D., began experiencing symptoms of anorexia nervosa when she was a preteen. Dkt. 124 (5th Cir. Op.) at 1. The Dwyers sought out an eating disorder specialist, as well as treatment for E.D. with a dietician and psychologist, but she did not improve. *Id*. Because of E.D.'s severe and worsening condition, the Dwyers brought her to a residential treatment facility, Avalon Hills. *Id*. When she entered the hospital in February 2015, at

---

[1] The Motion was referred by United States District Judge Robert Pitman to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated October 2, 2025.

When it was filed in 2017, the case was assigned to a then-active, but now-retired, District Judge, who presided over the bench trial and issued the judgment. Upon remand, the case was eventually assigned to District Judge Robert Pitman, who now presides over it.

age 14, E.D. was 5'2" and weighed 75.8 pounds. *Id*. Over the next few months, E.D.'s weight began to improve, but E.D. still exhibited a number of concerning symptoms. *Id*.

Initially, United approved full hospitalization benefits for E.D. *Id*. at 2. But in June 2015, the insurer decided to lower its coverage to partial hospitalization. *Id*. The Dwyers appealed. *Id*. United rejected the Dwyers' appeal and then stepped down E.D. to partial hospitalization. *Id*.

At this time, one of E.D.'s doctors at Avalon Hills stated E.D. was "still not at the point o[f] readiness" for the intensive outpatient program setting. *Id*. Given her improvement, E.D. was approved for a three-day weekend pass so she could leave the facility and visit her home. *Id*. Her doctors wanted to see how E.D. would fare outside of the tightly controlled clinical environment of Avalon Hills. *Id*. It did not go well. In three days, E.D. lost two pounds, and upon her return E.D.'s symptoms were exacerbated. *Id*. at 3-4.

Nonetheless, United decided it was appropriate to discharge E.D. entirely. *Id*. at 4. In United's view, stated in a July 2015 denial letter, E.D. could be stepped down to outpatient-only treatment. *Id*. E.D.'s doctors immediately objected, and United rejected their appeal. *Id*. Rather than abide by the company's decision, Mr. Dwyer decided to keep E.D. at Avalon Hills until the end of her treatment, paying out of pocket for her treatment. *Id*.

Dwyer's fight with United was not limited to United's decision to deny hospitalization benefits to E.D. *Id*. The parties also disagreed over whether the Avalon Hills treatment facility was covered by United's so-called "MultiPlan benefit." *Id*. Dwyer filed a formal appeal of this denial. *Id*. at 5. United acknowledged receiving this appeal, but "inexplicably" never responded to it. *Id*.

Dwyer sued in 2017, alleging that United had breached its obligations under the Employee Retirement Income Security Act of 1974 ("ERISA") by wrongfully terminating E.D.'s partial-hospitalization benefits and by failing to process all her claims under the MultiPlan rate. *Id*.

In 2019, the district court conducted a bench trial that consisted of approximately an hour and a half oral argument from the attorneys. *Id*. at 6. The district court ruled in favor of United on both counts, and Dwyer appealed. *Id*. The Fifth Circuit reversed and rendered judgment for Dwyer. *Id*. In doing so, the Fifth Circuit noted:

> "United's denial letters are not supported by the underlying medical evidence. In fact, they are *contradicted* by the record." *Id*. at 9.

> "We cannot overstate the importance of a fiduciary's duty to engage in a good faith 'meaningful dialogue' under the plan. . . . In this case, however, United not only failed to engage in a 'meaningful dialogue' with Mr. Dwyer; the ERISA fiduciary engaged in no dialogue at all." *Id*. at 9.

> "We therefore join a growing number of decisions rejecting similar denial letters issued by United across the country." *Id*. at 10 (citing cases).

The Fifth Circuit found Dwyer was entitled to judgment in his favor and remanded the case "solely to calculate Dwyer's compensatory damages, statutory penalties under 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1), attorneys' fees, and other relief." *Id*. at 20. The parties were able to reach an agreement on the calculation of benefits due pursuant to the judgment, but were unable to reach an agreement regarding the applicable pre-judgment interest rate or the contemplated application for attorneys' fees and costs. Dkt. 130 at 1. Dwyer's Motion seeks attorneys' fees, costs, and interest. Dkt. 133. The court will address those issues in that order.

## II.    ATTORNEYS' FEES

Dwyer's Motion seeks $437,175.25 in attorneys' fees, Dkt. 133, and an additional $12,000.00 for time incurred in researching and drafting the reply brief, Dkt. 137. Attorneys Glenn R. Kantor, Lisa S. Kantor, Elizabeth K. Green, Peter S. Sessions, and Amar Raval billed time on this matter for Dwyer, and they submitted declarations and time sheets in support of their request. Additionally, Dwyer, who also happens to be an attorney, submitted a declaration in support of the Motion. Attorney John Thompson, who did not work on the case, but is a Texas ERISA attorney,

also submitted a declaration in support of the Motion. United argues the fee request is excessive and must be denied or reduced.

### A.      Whether to Award Attorneys' Fees

To secure an award of attorneys' fees from an opponent, the prevailing party must prove that: (1) recovery of attorneys' fees is legally authorized, and (2) the requested attorneys' fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process. FED. R. CIV. P. 37(e), 37(a)(5); LOC. R. CV-54(b)(2).

ERISA expressly permits a federal court, in its discretion, to award reasonable attorneys' fees and costs to either party in a case brought pursuant to ERISA. *See* 29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 256 (2010). In deciding whether to award attorneys' fees in an ERISA benefits case, the court may consider the following factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980). Additionally, courts may award attorneys' fees under 29 U.S.C. § 1132(g)(1) only if the party has attained "some degree of success on the merits." *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 162 F.4th 527, 529 (5th Cir. 2025). Once it is determined that the plaintiff is entitled to attorneys' fees, it is incumbent upon the district court to "utilize the lodestar method to determine the amount to be awarded." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).

All of these factors favor an attorneys' fee award. Dwyer prevailed in full at the Fifth Circuit. His victory was not merely symbolic. The Fifth Circuit made clear that United was entirely culpable for Dwyer's damages. The court has no doubt that United can satisfy an award of attorneys' fees; and the court can only hope that such an award may cause United to pause before acting again under similar circumstances. Moreover, to the extent Dwyer sought to vindicate his own rights, he also sought to make clear to United that it could not treat other plan beneficiaries the way it treated him. Finally, as made clear by the Fifth Circuit, United had little to no merit in its position. Accordingly, Dwyer has shown that a fee award is appropriate.

A determination of reasonable and necessary attorneys' fees is premised on the application of the lodestar method. Courts in the Fifth Circuit apply the lodestar method to calculate attorneys' fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)). The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate. *Id.* (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). The appropriate hourly rate is usually defined by the market rate in the community in which the district court sits and should reflect the prevailing market rates, not the rates that "lions at the bar may command." *Black*, 732 F.3d at 502 (citing *Smith & Fuller*, 685 F.3d at 490). Litigants seeking attorneys' fees have the burden to show the reasonableness of the hours billed and that the attorneys exercised reasonable billing judgment. *Black*, 732 F.3d at 502 (citing *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). The lodestar amount is entitled to a strong presumption of reasonableness. *Black*, 732 F.3d at 502 (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)). There is a "strong presumption that

the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

After calculating the lodestar amount, the district court may adjust the amount of attorneys' fees based on the twelve factors[2] set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Black*, 732 F.3d at 502. Many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted. *See id.*; *Jason D.W. v. Houston Indep. School Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). The burden is on the party moving for attorneys' fees to establish that their requested fees are reasonable. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam).

United disputes the amount of fees owed. United contends (1) the relevant community for determining the prevailing hourly rate is the Western District of Texas, (2) the rates are excessive because they seek reimbursement at current rates rather than rates when the work was performed, and (3) the hours worked are excessive and unreasonable.

### B.    Hourly Rates

Dwyer seeks the following hourly rates for his counsel: Glenn R. Kantor, $900; Lisa S. Kantor, $900; Elizabeth K. Green, $800; Peter S. Sessions, $800; and Amar Raval, $500. United attacks Plaintiff Counsel's rates for not being based on Texas rates and for being based on their current billing rates.

---

[2] These factors are: (1) the time and labor required; (2) the novelty and difficulty of issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to accepting the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Black*, 732 F.3d at 502 n.7 (citing *Johnson*, 488 F.2d at 717-19).

1.     <u>Relevant Community</u>

Generally, the "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Where abundant and uncontradicted evidence proves the necessity of turning to out-of-district counsel, the out-of-district counsel "home" rates should be considered as a starting point for calculating the lodestar amount. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011).

Counsel G. Kantor, L. Kantor, Green, and Sessions are all located in California; Raval is based in Texas. Dwyer argues reasonableness of his out-of-state counsel's rates should be determined based on the prevailing "home-market" rates for ERISA attorneys litigating these cases in the Central District of California due to the lack of attorneys with the experience and willingness to represent plaintiffs in ERISA cases to recover health benefits in Texas.

United argues that the relevant community for determining the applicable rates is Texas. United concedes "out-of-district counsel's "'home' rates should be considered as a starting point for calculating" the reasonable hourly billing rate where "*abundant and uncontradicted* evidence prove[s] the necessity of [the movant's] turning to out-of-district counsel." Dkt. 136 (Resp). at 6 (quoting *McClain*, 649 F.3d at 382). Citing information from the Texas state bar, United argues that 2021, there were 108,816 active lawyers in the state of Texas and argues "there are a significant number of experienced plaintiffs' side ERISA practitioners in Texas." Dkt. 136 (Resp.) at 8, n.4. United also notes Dwyer's counsel Raval is a Texas attorney.

Dwyer attests that although he is a practicing corporate and transactional lawyer in Texas, he is not experienced in, or knowledgeable about, ERISA law. Dkt. 133-3 (Dwyer Decl.) ¶ 3. He contacted colleagues for recommendations for attorneys in the Austin area, and then Texas

generally, who represent plaintiffs in ERISA health benefit claims. *Id*. ¶ 4. He was initially unable to find legal assistance in Texas, and he was advised that he should seek counsel who had experience representing clients with mental health-related and eating disorder-related claims. *Id*. ¶ 4. E.D.'s healthcare provider in Utah referred him to attorneys at Kantor & Kantor LLP who enlisted Amar Raval to act as local counsel and co-counsel in this case. *Id*. ¶ 5. Raval is based in Texas, and ERISA claims make up about 80% of his practice. Dkt. 133-2 (Raval Decl.) ¶ 6. His ERISA cases include claims on accidental death and dismemberment insurance policies, disability insurance policies, and health insurance policies. *Id*. It does not appear that he specializes in mental health-related and eating disorder-related claims. *Id*. Dwyer also submitted an affidavit by Texas attorney John Thompson, who did not work on the case. Dkt. 133-7 (Thompson Decl.). In 2007, his practice became focused "on representing insurers and policyholders in insurance litigation (including property & casualty and employment practices liability); insurers and Plan Administrators in ERISA benefits litigation (including health, life, and disability); and various companies in general business litigation and employment law disputes." *Id*. ¶ 4. Since 2016, his practice focused principally on representing individuals with ERISA claims. *Id*. ¶ 5. He declared:

> Based on my years of practice and conversations with multitudes of potential health insurance claimants, I have found that it is very difficult and often impossible for claimants to find capable legal representation to pursue the recovery of wrongfully denied health insurance benefits. Currently, I do not accept such engagements. As a general rule, these actions are legally complex, factually complex, and involve a substantial risk of non-recovery, over-and-above the complexity and risks of non-health-insurance ERISA claims.

*Id*. ¶ 8. The court is satisfied that Dwyer has shown the necessity of turning to out-of-district counsel for representation in this matter.

United's arguments do not sway the court. United points out that in 2021, there were 108,816 active lawyers in Texas. Dkt. 136 at 7, n.3. But United makes no effort to identify how

many of those practiced plaintiff's side ERISA law, specializing in mental health and eating disorder claims, and who are willing to work on a contingency fee basis. United argues that "[a] simple Google search shows that there are a significant number of experienced plaintiffs' side ERISA practitioners in Texas, who are also admitted to practice in this district" and points to three attorneys and one law firm. Dkt. 136 at 8, n.4. But as Dwyer points out, those attorneys are only listed as counsel in only a handful of cases on Westlaw, only three of which involved health decisions, and none of which involved mental health benefits. Dkt. 137 at 6. Notably, United did not turn to Texas attorneys to serve as their lead counsel.

Accordingly, the court will use rates from the Central District of California to determine the reasonableness of Dwyer's fee request. Dwyer provided declarations from experienced California ERISA attorneys Ron Dean and David Lilienstein attesting to the qualifications, experience, and reputation of Dwyer's counsel in their representation of claimants for ERISA matters, and ERISA health matters specifically. Dkt. 133-8 (Dean Decl.) ¶¶ 17-23; Dkt. 133-9 (Lilienstein Decl.) ¶¶ 4, 11-18. Dean also stated he believed the sought rates are "on the low end of reasonable for California attorneys with [Dwyer's counsel's] skill and expertise." Dkt. 133-8 (Dean Decl.) ¶¶ 19-22. Similarly, Lilienstein stated the requested the out-of-state counsel's rates "are reasonable and on the lower end of the customary range of fees charged for attorneys with similar experience, skill, and abilities." Dkt. 133-9 (Lilienstein Decl.) ¶ 16. Lilienstein stated his hourly rate is $900/hour, and in a recent California case the court approved an hourly rate for him of $850, and of $750 for his partner. Dkt. 133-9 (Lilienstein Decl.) ¶ 5. Dean stated his hourly rate is $900/hour, which he has not raised since July 2021, as he is in the process of retiring and reducing his caseload. Dkt. 133-8 (Dean Decl.) ¶ 12. He described the rates he has been awarded

by courts over time, with most recent being $700/hour + 25% of the settlement amount in a 2012 case. *Id*. ¶¶ 7-11. From these facts, the out-of-district's attorneys' billed rates appear reasonable.

Accordingly, the court will use the attorneys' billed rates to calculate the lodestar. *See Kellstrom*, 50 F.3d at 328 ("When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.") (citation modified).

> 2.    Reasonableness of the Rates

United also argues the billed rates are unreasonable because: (1) the attorneys have applied their current rates to work performed years ago, (2) some attorneys stated they were awarded lower rates in other litigation, and (3) the amount is disproportionate to the results achieved.

This case was filed in 2017. Dkt. 1. Dwyer's attorneys worked on a contingency fee basis, which means they have not been paid for their work. Dkt. 133-1 at 31. It is well established that where there is a significant delay between the time legal services are rendered and an award of fees, a district court can either award a delay enhancement or make the award on current market rates. *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 863 (S.D. Tex. 2011) (citing *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)). Accordingly, to account for the nearly decade of time that has gone by, the court will use the current market rates.

The court is not concerned that some of the attorneys have been awarded fee rates by courts at a lower fee than they seek here. First, some of the cases are years in the past. Second, Dwyer's attorneys have shown that their rates are reasonable. Finally, Lisa Kantor has been awarded the rate she now seeks in two other cases. Dkt. 133-5 (Kantor Decl.) ¶ 16.

United argues "No reasonable person would be willing to pay any attorney hourly rates that would result in attorney's fees that are more than four times the amount of benefits being sought in the lawsuit." Dkt. 136 at 13. Notably, United did not illustrate its point by sharing how much it spent in fighting to deny $109,063.50 in benefits of life-saving treatment for a child. Fee shifting statutes exist because without them plaintiffs would often not be able to find counsel to pursue their claims. The court is not going to lower the fee rate on this basis alone.

Accordingly, Dwyer's attorneys' sought rates are reasonable and will apply them to the lodestar analysis.

### C.    Hours Billed

The party requesting attorneys' fees must also show that "billing judgment" was exercised, and that unproductive, excessive, or redundant hours were omitted from its requested amount. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The court should eliminate all hours that are excessive or duplicative. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court may also reduce hours that are too vague to permit meaningful review. *Kellstrom*, 50 F.3d at 326. The hours that are not eliminated should be those "reasonably expended on the litigation." *Watkins*, 7 F.3d at 457. If the party seeking fees does not show billing judgment, the court may reduce the award by a percentage to substitute for the exercise of billing judgment. *Walker*, 99 F.3d at 770.

United argues Dwyer's attorneys' hours should be cut because they include travel time, "excessive, redundant, or otherwise unnecessary" entries, "vague block-billing" entries, clerical and paralegal expenses, and time spent on motions they lost.

Before reaching United's arguments, the court wants to reiterate that Dwyer's counsel was working on a contingency fee basis for eight years. *See* Dkt. 133-1 at 31. They had no incentive to

spend unnecessary time on this case—if they lost the case, they would not get paid; and if they won, a court would review their fee request. Given how adamantly United fought to not pay $109,063.50 in benefits, counsel had every reason to believe United would fight just as hard to not pay their fees. As the Ninth Circuit has stated,

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)

  1. <u>Travel Time</u>

   United complains that Dwyer's attorneys billed for their travel time, but United cites no authority that travel time is not compensable.

   In the Fifth Circuit, attorney travel time is typically compensated at 50% of the attorney's rate. *See Tasch, Inc. v. Unified Staffing & Assocs., Inc.*, No. CIV. A. 02-3531, 2003 WL 23109790, at *6 (E.D. La. Dec. 30, 2003) (citing cases) ("Courts in this Circuit typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time."); *see also Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 627 (W.D. Tex. 2015) (Lamberth, J.) (citing cases and applying same rule to an attorneys' fee award under the Fair Labor Standards Act). However, the Fifth Circuit has also recognized that "when a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling." *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (citation modified). The Fifth Circuit recognized that there is a not a consensus on billing for non-working travel time under the statute applicable in that case and

affirmed the bankruptcy court's discount on travel time because the attorneys had not shown comparably skilled practitioners charged their full hourly rates for travel time. *Id*. at 828-29.

Similarly here, Dwyer has not shown that comparably skilled ERISA attorneys charge their full hourly rates for travel time. Nor do the billing records indicate that work was performed during the travel time. See *Furlow v. Bullseye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *7 (W.D. Tex. Jan. 3, 2019) (discounting attorney travel time when the record did not demonstrate work was performed). Accordingly, the court will recommend an award at 50% of the regular rate. From the court's review the following time entries are affected:

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| 09/25/18 | Travelled to Austin for mediation. | GRK | 9.00 |
| 09/26/18 | Return travel from Austin from mediation. | GRK | 9.00 |
| 11/07/19 | Travel to Austin for oral argument. | EKG | 6.20 |
| 11/08/19 | Travel from Austin to Los Angeles | EKG | 6.40 |
| 04/29/24 | Travelled to New Orleans for appeal argument | EKG | 7.00 |
| 5/01/24 | Travel time from New Orleans | EKG | 6.00 |

The undersigned recommends the fees for this time be halved.

### 2.    "Excessive, Redundant, or otherwise Unnecessary" Entries

"Hours which, though actually expended, nevertheless are excessive, redundant, or otherwise unnecessary, or which result from the case being overstaffed, are *not* hours reasonably expended and are to be excluded from this calculation." *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) (citation modified). United identifies a list of time entries it contends are excessive, redundant, duplicative or otherwise unnecessary. Dkt. 136-1 (Table 1).

Specifically, United asserts that Dwyer's counsel cannot recover for 9.4 hours spent communicating with the client during the administrative review process and/or well-before the Complaint was filed in "January 2018" because such time is not compensable under ERISA. United again fails to cites any authority for its argument. *See* Dkt. 136 at 15.

The Complaint was filed May 11, 2017, not January 1, 2018. Nonetheless, the court takes note that the engagement began in October 2015, the Complaint began to be drafted in January 2017, and some hours were billed between those dates. Dkt. 133-1 at 9. Pre-suit fees are recoverable so long as the fees are for work in preparation for litigation and not for pre-trial administrative proceedings. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 847 n.12 (5th Cir. 2013). Dwyer does not defend the 9.4 hours United attacks, and the court finds they are too attenuated in time from the time the Complaint was filed to be in preparation of the litigation. Accordingly, the undersigned recommends fees for this time not be awarded:

| 10/02/15 | Draft fee agreement, review file. | LSK | 1.00 |
|---|---|---|---|
| 10/06/15 | Review client signature and info sheet completed with fee agreement. | LSK | 0.20 |
| 11/15/15 | Conference w/client re case. | LSK | 0.50 |
| 03/01/16 | Conference w/LSK re case. | EKG | 0.50 |
| 03/01/16 | Email exchange w/client re status; email EKG re same. | LSK | 0.20 |
| 03/01/16 | Email to provider re damages; review EOBs | EKG | 0.50 |
| 03/07/16 | Conference w/client re case. | EKG | 1.00 |
| 03/08/16 | Legal research re post-service claim, SCA; review file. | EKG | 0.80 |
| 03/08/16 | Review add'l documents produced by client. | EKG | 0.60 |
| 03/21/16 | Damage analysis and emails w/client re same. | EKG | 0.40 |
| 03/22/16 | Conference w/client re questions, status. | EKG | 0.70 |
| 03/23/16 | Review damage analysis from provider; emails re same. | EKG | 0.30 |
| 04/26/16 | Email exchange w/client re questions and treatment records | EKG | 0.30 |
| 04/28/16 | Review letter from UHC re exhaustion. | EKG | 0.10 |
| 04/29/16 | Emails w/client and provider re damages, next steps. | EKG | 0.20 |
| 04/29/16 | Email exchange w/client re EOBs provided. | EKG | 0.20 |
| 05/03/16 | Email exchange w/client re gap exception questions. | EKG | 0.20 |
| 05/17/16 | Email exchanges w/KMAC re gap exception. | EKG | 0.20 |
| 08/16/16 | Review claim file received from UHC. | EKG | 1.50 |

Dkt. 133-1 at 9.

United also asserts Dwyer's counsel should not be able to recover for the 71.29 hours that Raval billed because such time for local counsel is unwarranted. United contends that this amount of time either refutes the assertion that Dwyer's out-of-district attorneys were sufficiently

experienced to handle matters in the district courts of the Fifth Circuit or that his local Texas counsel was not sufficiently experienced to handle the case himself.

The court disagrees. Raval's time entries demonstrate he served as more than "just" local counsel. Dkt. 133-2. In addition to preparing for and attending hearings and tracking deadlines, he drafted motions and substantively reviewed the administrative record. *Id*. However, as noted before, Raval did not—before this case—have a depth of experience with ERISA mental health or eating disorder cases. The court will not strike his time.

United also challenges .9 hours related to Dwyer's out-of-district counsel's filing a motion for admission *pro hac vice* as well as fees related to *pro hac vice* motions by other counsel that never filed such motion. *See* Table 1, p. 10. United cited to Table 1, page 10, but it is unclear what specifically United is challenging. The time entries include drafting *pro hac vice* motions for L. Kantor and Green, and the docket shows they were both admitted *pro hac vice*. The time entries also include and August 14, 2017, entry for 1.10 hours for "Reviewed court's order to refer motion to strike to US Magistrate M. Lane; reviewed court's order granting pro hac vice motion for A. Raval." *Id*. It is true that Raval did not move for his own admission *pro hac vice*, but he did move for another attorney's admission, Dkt. 27, which was granted on August 15, 2017, Dkt. 29. It appears the August 14, 2017 time entry should have reflected an August 15 date; however, it also included a review of the referral order on a motion to strike. The court will not strike this time.

United challenges 44.8 hours where numerous attorneys performed the same tasks (*e.g.*, two attorneys reviewing the same document and charging partner rates for doing so), which United contends is improperly duplicative and not compensable. *See* Table 1, pp. 1-3. It is unclear which specific time entries on these three pages United believes are duplicative. To the extent United

challenges them all, United's challenge fails. These records show both Green and Sessions reviewed court orders or United's filings, as the court would expect competent counsel to do.

Finally, United challenges fees related to time 76.33 hours attorneys billed communicating with one another and keeping one another updated on what was going on in this case. *See* Table 1, pp. 4-9. On this point, United contends Dwyer's retention of five attorneys is unreasonable.[3]

In its response, United raises the number of Dwyer's attorneys several times. Green's hours account for 65% of the attorney time, followed by Raval and Sessions at approximately 13% each, Mr. Kantor at 8%, and Ms. Kantor at less than 1%. Dkt. 133-1 (Green Decl.) ¶ 7. Ms. Kantor billed 3.20 hours on this matter at a rate of $900 per hour for a fee of $2,880.00. Dkt. 133-1 (Green Decl.) ¶ 31. From the billing records, it is apparent that Ms. Kantor opened the relationship with Dwyer and then Green took over running the case with Ms. Kantor's occasional guidance. Dkt. 133-1 at 9-20. There are several time entries that included Ms. Kantor that she did not bill for. *Id*. ("conference w/LSK"). Similarly, it appears Mr. Kantor's primary role in the case was participation in the mediation. *See* Dkt. 133-1 at 9-20. Thus, there were actually only three attorneys working on the daily aspects of the case, with Green doing the most work. The court notes that United had four attorneys make appearances in this case. The court has no idea how many other attorneys—including potentially in-house counsel for United—performed work on the case. United's complaint about the number of plaintiff's attorneys who worked on the case are not well taken.

Accordingly, the court now turns to the 76.33 hours over eight years that the attorneys billed for communicating with one another. Table 1, pp. 4-9 actually totals 87.43 hours and

---

[3] United also raises an issue that three law firms worked on this case. Despite the ridiculousness of this argument, the court will address it as it demonstrates the inanity of many of United's arguments. In 2023, during the course of this litigation, Green left Kantor & Kantor to start her own firm. Dkt. 133-1 (Green Decl.) ¶ 8. The third law firm used by Dwyer is Raval's local firm.

includes time not just for communications among attorneys but also reviewing documents, performing substantive work on the case, and communicating with the client. Many of these entries do not include any communication with the other attorneys working on the case. Thus, it is unclear what specific time entries United challenges. Nonetheless, review of the entries indicate communication among the attorneys is no more than what the court would expect from a team of attorneys working on a case. Again, United had multiple attorneys appear in this case; its complaints that Dwyer did as well ring hollow.

3.    "Vague Block-Billing" Entries

United asserts that 229.19 hours comprise "improperly vague and block-billed entries." Dkt. 136 at 17; Dkt. 136-2 (Table 2). United urges the court to reduce the total amount of that time by a minimum of 15 percent. Apart from listing time entries in Table 2, United does not specifically identify vague or block-billed time, nor does it explain why the time entries in Table 2 are vague. While some time entries in Table 2 do include multiple tasks, the claimed time is not excessive or vague. For instance:

| 3/14/2025 | Review, revise, and finalize motion, declarations, exhibits for filing. | EKG | 5.00 |
|---|---|---|---|
| 3/12/2025 | Email exchanges w/co-counsel re declarations; organize documents for filing; review, revise motion for attorney's fees. | EKG | 4.00 |
| 3/10/2025 | Draft motion for attorneys' fees, costs, interest; legal research re same. | EKG | 5.00 |
| 3/5/2025 | Draft motion for attorneys' fees, costs, interest; legal research re same; draft declaration for motion. | EKG | 3.20 |
| 11/4/2024 | Review docket filings and telephone conference order; email exchange w/A. Raval re conference, attorney fee motion; email K&K re attorney fee motion and status; review order from A. Raval on fee rates | EKG | 0.40 |
| 9/25/2023 | Review record for appeal; review parties' trial briefs; legal research re same | PSS | 6.20 |

Dkt. 136-2 at 3. None of these entries are too vague to permit meaningful review. *See Kellstrom*, 50 F.3d at 326. Moreover, none leave the court wondering how the attorney could have spent the

claimed amount of time on the tasks listed. The "vague block-billed" entries identified by United are all reasonable. The court will not discount this time.

4.    Clerical and Paralegal Expenses

United claims that some time entries "include work that should have been done by paralegals and other clerical tasks, which are non-recoverable overhead expenses." Dkt. 136 at 18. Specifically, United directs the court to its Table 3, Dkt. 136-3, claiming that Dwyer's counsel spent 141.89 hours on clerical and/or paralegal work. *Id.* "For example, Plaintiff's attorneys include a significant amount of entries for "revising," "finalizing," and "filing" documents (which should be done by assistants and/or possibly paralegals) as well as for conducting legal research (that should have been done by a paralegal), especially considering the excessive rates they are seeking for their work (as referenced above)." *Id.*

The court should not award attorneys' fees at the full billing rate for clerical or paralegal work that happened to be performed by an attorney. *Coleman v. Houston Indep. Sch. Dist.,* 202 F.3d 264 (5th Cir. 1999) (unpublished). Paralegal fees are recoverable as part of a prevailing party's award for attorneys' fees to the extent that the paralegal performs work traditionally done by an attorney. *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982); *Walker*, 99 F.3d at 773. Fees for paralegals may be awarded at market value if the prevailing practice in the relevant community is to bill those services directly to clients. *Weir v. Fed. Asset Disposition Ass'n*, No. CIV.A.3-91-CV-0372-P, 1998 WL 873001, at *9 (N.D. Tex. Dec. 1, 1998).

Legal tasks that may be performed by a paralegal and billed accordingly include factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence. *Bowman v. Prida Constr., Inc.*, 568 F. Supp. 3d 779,

786 (S.D. Tex. 2021) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)). Conversely, filing legal documents; calendaring of events; communications regarding scheduling issues; and preparing, assembling, and redacting documents and exhibits are clerical and cannot be billed. *Id.* at 787.

The court is satisfied that in Dallas, where Raval practices, attorneys typically bill clients for their paralegal's time. *See* Dkt. 133-2 (Raval Decl.) at ¶ 21. Included in the entries that United objects to are items that are quintessentially tasks traditionally done by attorneys, such as legal research, drafting documents, and revising[4] documents. However, review of Table 3 and the billing records indicates some entries reflect purely clerical work that is not recoverable as attorneys' fees:

| | | | |
|---|---|---|---|
| 4/17/2024 | Organized and printed record for review; email to EKG re record | PSS | 0.80 |
| 6/5/2018 | Download joint status report; forward to Mr. Raval; | TM[5] | 0.04 |
| 5/29/2018 | Download status report; forward to Mr. Raval; | TM | 0.09 |
| 5/25/2018 | Attention to receipt of mediation date and calendar with reminders; | TM | 0.04 |
| 5/11/2018 | Download Status Report to system; forward to Mr. Raval; | TM | 0.25 |
| 4/23/2018 | Download Status Report to system; forward to Mr. Raval; | TM | 0.25 |
| 4/10/2018 | Attention to medication dates; notes to the file; | TM | 0.25 |
| 4/2/2018 | Download Status Report; forward to Mr. Raval; | TM | 0.25 |
| 3/12/2018 | Download joint status report to system; forward to Mr. Raval; | TM | 0.49 |

Accordingly, fees for this time should not be awarded.

### 5.    Losing Motions Practice

United argues the fee award should be reduced for unsuccessful motion practice, specifically Dwyer's challenge to United's Motion for a Protective Order and United's Motion to Strike the Declaration of Loreen Thompson. *See* Dkt Nos., 60-66, 97-98. United argues that a prevailing plaintiff cannot recover for time spent on unsuccessful claims.

---

[4] No attorney should underestimate the important role revising or editing a document plays, especially for documents submitted to the court. Poorly edited documents make the court's job harder, and the court appreciates well-crafted legal briefs.

[5] TM are the initials of Raval's legal assistant. Dkt. 133-2 (Raval Decl.) ¶ 21.

But there is a difference between unsuccessful claims and unsuccessful motion practice. "A plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the Court did not adopt each contention raised." *Halupka v. Federal Express Corp.*, No. 4:03-cv-350, 2006 WL 8441053, at *3 (E.D. Tex. June 22, 2006)) (citing *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 n.10 (5th Cir. 1986)). The court will not reduce Dwyer's attorneys' fees for this motion practice.

Similarly, United also argues that "Plaintiff initially lost at trial in this case and yet seeks 76.7 hours in attorneys' fees related to these efforts. While Plaintiff was ultimately successful in the Circuit Court, he should not be entitled to the full amount of attorneys' fees for his original losing effort." Dkt. 136 at 19 (citation modified). But as the Fifth Circuit held, Dwyer should have won at trial. United's argument fails.

### D.    *Johnson* Factors

The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to accepting the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Black*, 732 F.3d at 502 n.7 (citing *Johnson*, 488 F.2d at 717-19).

ERISA is a complex area of the law that many lawyers have little to no experience in. This case presented an even more specialized area of ERISA—mental health benefits for a child's eating disorder. After United refused to pay for E.D.'s continued in-patient treatment, Dwyer was forced

to spend his savings and refinance his mortgage to pay for her continued treatment. Dkt. 133-1 at 22, 24. Thus, he required counsel who could take the case on a contingency fee basis, risking that they would never be paid for their work. As such, his was not a desirable case for most litigators. Fortunately for him, he was able to find attorneys with experience in the subject matter and a willingness to work for free for years until they achieved the ultimate victory—success on his claims and judgment rendered at the Fifth Circuit.

The court recognizes that the amount of attorneys' fees far outpaces the amount recovered. United makes much of this. However, there is no indication that Dwyer could have recovered his benefits without the expenditure. Reducing the fee award would only make it harder for future plaintiffs to find vindication in the courts.

Many of the *Johnson* factors have already been considered in the award of attorneys' fees. However, to the extent that the undersigned erred and should have reduced the lodestar further in the initial analysis, the undersigned finds application of the *Johnson* factors support the award as previously recommended.

## III.   COSTS

Dwyer seeks litigation costs in the amount of $6,517.27 under 29 U.S.C. § 1132(g). *See* Dkt. 133-1 (Green Decl.) at 21. United, of course, objects. United complains that the costs statement is not sufficiently detailed and Dwyer should not be able to recover the costs of out-of-state counsel's travel.

As the court has already concluded that Dwyer's selection of out-of-state counsel was justified, United has failed to show those costs are unreasonable. Dwyer's fees are sufficiently detailed. The undersigned will not reduce them.

## IV.   INTEREST

Dwyer seeks prejudgment interest for the amount of benefits denied by United at issue in this case. *See Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016) ("Prejudgment interest is available in ERISA cases."). "It is not awarded as a penalty, but as compensation for the use of funds." *See id.* Pre-judgment interest is awarded to make a plaintiff whole. *Williams v. Trader Publishing Co* ., 218 F.3d 481, 488 (5th Cir. 2000); *Ducre v. SBC-Sw. Bell*, SA-04CA-835-XR, 2007 WL 593616, at *3 (W.D. Tex. Feb. 21, 2007). Because there is no ERISA law setting prejudgment interest rates, courts look to state law for that purpose. *Perez*, 823 F.3d at 274. However, because state law is not binding but merely provides guidance, it is within the discretion of the district court to select an equitable rate of prejudgment interest. *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 984–85 (5th Cir. 1991) (abrogated on other grounds) (citing *Dallas–Fort Worth Regional Airport Bd. v. Combustion Equip. Assocs., Inc.*, 623 F.2d 1032, 1041 (5th Cir. 1980)).

Dwyer seeks a prejudgment interest in the total amount of $87,596.77, which is built on a rate of 8% compounded annually based on the prime rate on September 26, 2024, the date when the Fifth Circuit issued its decision awarding him benefits. Dwyer relies in part on *Ducre*, which awarded prejudgment interest at prime rate on the date of the court's decision. *Ducre*, 2007 WL 593616, at *3. United argues the prime rate at the time the damages were incurred should apply, here 4%, relying on *In re Harwell*, No. 22-51321-MMP, 2024 WL 332876, at *10 (Bankr. W.D. Tex. Jan. 26, 2024).

*Harwell* was not an ERISA case; *Dulce* was. As such, *Dulce's* reasoning is more persuasive. Dwyer was deprived of $109,063.50 for 10 years. He was forced to drain his savings and refinance his home to pay for his daughter's care. The undersigned will recommend an award of $87,596.77 in prejudgment interest.

## V.    RECOMMENDATIONS

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Attorneys' Fees, Costs, and Interest (Dkt. 133) be **GRANTED, in part, and DENIED, in part**. As described above, the undersigned recommends that the motion be granted, but that the attorneys' fee claim be reduced by the amounts detailed above.

Without prejudice to Dwyer's right to file objections to seek his fee request in whole, the undersigned **ORDERS** him to submit a notice, within 14 days, to the court reflecting the reductions the undersigned has recommended.

## VI.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 21, 2026.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE